**Florence FICK, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE CO., Defendant.**

**No. 03–80590–CIV–PAINE.**

United States District Court, S.D. Florida.

Nov. 11, 2004.

Paul Martin Sullivan, Jr., Paul M. Sullivan, Jr., P.A., West Palm Beach, FL, for Plaintiff.

Ralph Colby Losey, Katz Kutter Alderman Bryant & Yon, Orlando, FL, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PAINE, District Judge.

This matter is before the court upon the following motions: Plaintiff's Motion for Summary Judgment as to Counterclaim (DE 24); Defendant's Motion for Summary Judgment (DE 27). Upon review of the case and the applicable authority, the court enters the following order.

### Background

Plaintiff/Counterdefendant ("Fick") initiated the instant action against defendant/counterplaintiff ("MetLife") to recover long term disability benefits allegedly due her under the terms of an employee welfare benefit plan. MetLife responded to the complaint, and brought two counterclaims against Fick: (1) A claim for Equitable Relief Under ERISA Enforcing the Terms of the Plan; (2) A claim for Unjust Enrichment.

In sum, Plaintiff, a former employee of Sears Roebuck & Co. (Sears) claims that her long-term disability benefits under the Sears Long–Term Disability Plan ("LTD Plan") were improperly terminated. Plaintiff claims that she is totally disabled and as a result is unable to perform the duties of any occupation. Ms. Fick, who is 56 years old, claims that her disability stems from her lumbar intervertebral disc syndrome, lumbar radiculitis, and chronic myofascial pain, all of which was caused by

an on-the-job injury while she was lifting a box on May 15, 1990. After the injury, Ms. Fick returned to her job, with some accommodations by Sears, where she worked until October 28, 1997, at which time she claimed to be disabled. Ms. Fick applied for disability benefits and MetLife awarded her long-term disability benefits beginning March 17, 1998. Thereafter, on May 6, 2002, MetLife advised Ms. Fick that her disability benefit payments had been terminated as of April 30, 2002, when Met Life rendered a decision that Ms. Fick was not permanently disabled under the "any occupation" provision of the Long Term Disability Plan (LTD or Plan). This action ensued.

The parties agree that the LTD Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and that MetLife is the Plan Administrator. The parties have stipulated that with only one exception [1], this case is ripe for adjudication based upon the undisputed administrative record and the exhibits attached to the parties' previously submitted memoranda and exhibits.

### Summary Judgment Standard

The procedure for disposition of a summary judgment motion is well established. According to the Federal Rules of Civil Procedure, summary judgment is authorized only when:

> the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

1. The one exception is that limited testimony may be necessary on MetLife's Counterclaim Count I in the event the court does not award judgment to MetLife on MetLife's Counterclaim Count II.

Fed.R.Civ.P. 56.

The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Id.*

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the present case, where the parties agree on the undisputed factual record, the Court must determine which party is entitled to judgment under the applicable law.

### General Standard of Review in ERISA Cases

ERISA provides that a plan participant or beneficiary may bring a civil action in federal court to "recover benefits due to him under the terms of his plan." ERISA, § 1132(a)(1)(B). At the same time, however, ERISA does not specify the appropriate standard of review of a plan administrator or fiduciary's denial of a beneficiary's claim for benefits. Nonetheless, when deciding whether an employee has been improperly denied disability benefits under ERISA, it is necessary to first determine what standard of review is to be applied. Because a standard of review for challenges to benefit eligibility determinations is not prescribed by ERISA itself, it has evolved as a matter of federal common law. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80, (1989).

Applying principles of trust law, the United States Supreme Court in *Firestone* held that a denial of benefits "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948. The *Firestone* Court offered a range of standards that may apply to benefits determinations, and indicated that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion'."

*Id.* at 116, 109 S.Ct. 948 (citing Restatement (Second) of Trusts, § 187, Comment d (1959)). Since *Firestone* each of the federal circuit courts has developed its own analysis of how to implement ERISA judicial review when determining whether a plan administrator has wrongfully denied benefits to a beneficiary or plan participant.

■ After *Firestone*, the Eleventh Circuit adopted three standards for reviewing a plan administrator's decision: "(1) *de novo* where the plan does not grant the administrator discretion[;] (2) arbitrary and capricious when the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest." *Buckley v. Metro. Life,* 115 F.3d 936, 939 (11th Cir.1997); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.,* 240 F.3d 982, 993 (11th Cir.2001). Specifically addressing the effect a conflict of interest has on the court's review of an administrator's decision, the Eleventh Circuit noted that the trust nature of an employee benefit plan is fundamental to ERISA, and the administrator, as a fiduciary, is entitled to exercise a great deal of discretion. *Brown v. Blue Cross,* 898 F.2d 1556, 1561 (11th Cir.1990). However, where a conflict of interest exists, the trust aspect of an employee benefit plan is minimized. *Id.* Accordingly, where the administrator of an ERISA plan has discretionary authority to determine eligibility for benefits *and* acts under a conflict of interest, such a determination involving plan interpretations is not entitled to as much deference. *Id.* at 1561.

■ Determining the standard of review in this type of ERISA case is a threshold question because the standard of review in an ERISA case will dictate what facts or evidence the plaintiff must prove in order to successfully claim an entitlement to benefits under the terms of an employee benefit plan.

After reasoning that a conflict of interest entitles the administrator's decision to less deference, the Eleventh Circuit set out to develop a coherent method for integrating factors such as self-interest into a legal standard for reviewing benefit determinations. *Brown* at 1561. It did not adopt the approach of simply looking at the record with a "somewhat jaundiced eye." Instead, the Eleventh circuit devised a unique step-by-step, burden-shifting method of evaluating the ERISA administrator's decision. *Id.; HCA Health Services v. Employers Health Ins. Co.,* 240 F.3d at 993 ("At each step of this analysis, the court makes a determination that results in either the progression to the next step or the end of the inquiry.")[2]

The court's evaluation at each stage of this multi-step approach may require the court to consider different information and evidence. Therefore, for clarity, each step will be set out in detail.

■ Initially. the court must determine whether the plan grants the adminis-

---

**2.** Other circuits have specifically rejected the Eleventh Circuit's burden-shifting approach. *See e.g. Pinto v. Reliance,* 214 F.3d 377, 391 (3d Cir.2000); *Vega v. National Life Ins. Services, Inc.,* 188 F.3d 287, 296 (5th Cir.1999); *Armstrong v. Aetna Life Ins. Co.,* 128 F.3d 1263, 1265 (8th Cir.1997); *Chambers v. Family Health Plan Corp.,* 100 F.3d 818 (10th Cir.1996); *Doe v. Group Hospitalization & Medical Services,* 3 F.3d 80,87 (4th Cir.1993); *Miller v. Metropolitan Life Insur. Co.,* 925 F.2d 979, 984 (6th Cir.1991). Instead, these circuits have adopted a sliding-scale approach, in which the court's level of scrutiny depends on the seriousness of the conflict. Under the sliding-scale approach, the greater the evidence of conflict on the part of the administrator, the less deferential the abuse of discretion standard. However, under the sliding-scale approach, the burden never shifts to the administrator to prove that its decision was not tainted by self-interest.

trator discretion. *Id.* If no discretion is granted, the decision is reviewed *de novo.* *Id.* If the administrator is granted discretion, then at a minimum the court applies arbitrary and capricious review. *Id.* In the present case, pursuant to the LTD, MetLife is provided with "discretionary authority to interpret the terms of the Plan and to determine eligibility to Plan benefits." Therefore, because the Plan endows MetLife with discretion to determine benefit eligibility, the court must apply, at least, the arbitrary and capricious standard when reviewing MetLife's decision to terminate LTD benefits.. Having determined that the subject Plan grants the administrator discretion, the court first reviews the claim administrator's decision *de novo* to determine whether the decision to deny benefits was "wrong." *Id.*[3] Indeed, "[i]t is fundamental that the fiduciary's interpretation first must be 'wrong' from the perspective of *de novo* review before a reviewing court is concerned with the self-interest of the fiduciary." *Brown,* 898 F.2d 1556, 1567 n. 12.

### *Was MetLife's Decision to Deny Benefits "Wrong?"*

 Determining whether the claims administrator's decision was "wrong" is a threshold question in both the arbitrary and capricious and heightened arbitrary and capricious standard of review. A *de novo* review is limited to a review of the Plan documents and the administrative record. *Parness v. Metropolitan Life Insurance Company,* 291 F.Supp.2d 1347, 1356–57 (S.D.Fla.2003). In the present case, the court has reviewed the administrative record and finds that the medical evidence in the record by April 30, 2002, the date MetLife ceased paying continuing

LTD benefits, provides a substantial basis to support a finding that MetLife's denial of Plaintiff's benefits was not "wrong." MetLife's denial was based upon two nurse consultant reviews concluding that the Plaintiff was no longer disabled, as well as Dr. Porter's independent medical review dated February 4, 2002 and the again after a review of the functional capacity test, on April 26, 2002, both concluding that Plaintiff was no longer disabled. Further, the administrative record reflects that the claims administrator had evidence suggesting that there were at least four occupations available to the Plaintiff which were within her physical capabilities. There was also a second independent medical review by Dr. Silverman dated August 21, 2002, who agreed with the prior conclusions of the nurse consultants and Dr. Porter, and concluded that Plaintiff was no longer disabled. Additionally, there was a functional capacity evaluation conducted during the administrative process, which clearly demonstrated that Plaintiff was no longer disabled. A functional capacity evaluation is the best means of assessing an individual's functional level. *See, Lake v. Hartford Life and Accident Ins. Co.,* 320 F.Supp.2d 1240, 1249 (M.D.Fla.2004). In the subject case, MetLife did not rely solely on the results of the functional capacity test but, rather, had the results of the test evaluated by an independent medical consultant before it concluded that the results of the test warranted a conclusion that the Plaintiff was capable of working.

The only medical evidence in the administrative record during the relevant time period leading up to the date MetLife ceased payment of benefits, which would have supported a finding that the Plaintiff continued to be disabled, was the

---

**3.** "Wrong" is the label used by the Eleventh Circuit to describe the conclusion a court reaches when, after reviewing the plan documents and the administrative record, the court disagrees with the claims administrator's decision. *HCA,* 240 F.3d at 993, n. 23;

Plaintiff's treating chiropractor. While this evidence is slight by comparison and does not tip the scales in favor of the Plaintiff, it is relevant that the conclusion of the treating chiropractor was acknowledged and considered by the independent medical doctors when they formulated their own independent opinions that the Plaintiff was capable of working. The independent medical doctors considered and rejected the treating chiropractor's conclusion because they determined that it was contrary to the abundant evidence which suggested that the Plaintiff was capable of working. Given the quality of the opinions, i.e. a medical doctor versus a chiropractor, and the potential for bias, i.e. an independent examination versus a treating doctor's evaluation, as well as the greater number of conclusions that the Plaintiff was able to work, the court finds that, upon *de novo* review of this administrative record, it cannot be said that Met-Life's decision to terminate was "wrong."

Accordingly, because the court agrees with the claims administrator's decision, i.e. that the decision was "right," the court's inquiry should end and the administrator's decision should be affirmed. However, in the event the present case is appealed to the Eleventh Circuit Court of Appeals, this court will undertake the full *Brown* burden-shifting analysis so that there will be a complete record of the findings below.

### Was MetLife's Decision Arbitrary and Capricious?

 The law is clear that, had the court disagreed with the administrator's deci-

sion, i.e. found that it was "wrong," then the court's second step would be to decide whether reasonable grounds exist in the record to support the defendant's interpretation of the plan or decision. If reasonable grounds do not exist for the administrator's decision, then the decision would be deemed to be arbitrary and capricious, and the administrator's decision would be reversed. *HCA Health Services v. Employers Health Ins. Co.*, 240 F.3d at 994. In pre-*Brown* cases, if reasonable grounds did in fact exist in the record to support the administrator's decision, then the court simply deferred to the administrator's discretion and the denial of benefits was upheld. In other words, under the pure arbitrary and capricious standard of review, the court's determination of whether the ERISA plan participant is entitled to benefits hinges solely on whether, nevertheless, the administrator's wrong decision is reasonably supported by evidence in the record. *Yochum v. Barnett Banks, Inc.*, 234 F.3d 541 (11th Cir.2000).

 However, following *Brown* and its progeny in the Eleventh Circuit, the law is clear that if a reviewing court finds that the claims administrator's decision was legally "wrong," it must continue its inquiry to determine whether the administrator's decision is wrong, but reasonable.[4] When conducting this review, the court must first determine whether the administrator operated under a conflict of interest. *Id.* If no conflict of interest exists, then a pure arbitrary and capricious standard of review applies, and a wrong, but reasonable, interpretation will be upheld. *Id.*[5] However, if a conflict of interest does

---

4. *Brown*, 898 F.2d at 1566 n. 12 ("It is fundamental that the fiduciary's interpretation first must be 'wrong' from the perspective of *de novo* review before a reviewing court is concerned with the self-interest of the fiduciary.")

5. The Eleventh Circuit explained that in "applying heightened arbitrary and capricious review, the court follows the same steps that constitute arbitrary and capricious review, but given the claims administrator's self interest, it continues the inquiry." *Id.* at 994.

exist, then the Eleventh Circuit shifts the burden to the claims administrator to prove that its interpretation of the plan is not tainted by its self-interest. *Id.* at 995. A wrong, but apparently reasonable interpretation, is arbitrary and capricious under the heightened standard of review, if it advances the conflicting interest of the administrator at the expense of the beneficiary. *Brown,* 898 F.2d at 1566–67. Moreover, even if the claims administrator satisfies the burden of proving that its decision is not tainted by self-interest, the claimant may still be successful if the claimant can show by "other measures" that the administrator's decision was tainted by self-interest. *Id.* If defendant does not carry its burden of purging the taint of self-interest or if the plaintiff shows by other measures that the decision was infected with self-interest, then the administrator's factual determinations are not entitled to deference. Thus, a wrong, but reasonable, interpretation motivated by the administrator's self-interest must be overturned and an award of benefits made to the plaintiff.

 The Eleventh Circuit's burden-shifting approach applies equally to an administrator's factual determinations, as well as the administrator's plan interpretations. *Torres v. Pittston Company,* 346 F.3d 1324 (11th Cir.2003). Thus, since the 2003 *Torres* decision, the Eleventh Circuit law is that the language, rationale, and holding of *Brown* apply with equal force to factual determinations of claims administrators, and a heightened arbitrary and capricious standard of review should be applied to both plan interpretations and factual determinations of ERISA claims administrators when a conflict of interest exists. Therefore, it is now well settled in this Circuit that the standard of review that is found to be applicable in a particular case applies equally to both legal and factual determinations. *E.g., Shaw v. Conn. Gen. Life Ins. Co.,* 353 F.3d 1276, 1285 (11th Cir. 2003) ("[O]ur Court has already declined to draw a distinction between law and fact in choosing the standard of review for denial of ERISA benefits."), *reh'g and reh'g en banc denied,* Table 99 Fed.Appx. 884, 2004 WL 503608 (11th Cir.2004).

### Was MetLife Laboring Under a Conflict of Interest?

 If The Plan was self-insured, with the insurance company acting as administrator and receiving full reimbursement from the plan sponsor for covered medical claims, then there is no conflict of interest and the court need not apply a heightened standard of review to determine whether the denial of the claim was appropriate. *See, Brown,* 898 F.2d at 1562.

In the present case, it is undisputed that the Plan grants MetLife discretionary authority to determine eligibility benefits, and also that MetLife both administers the plan and pays claims out of its own assets.

 MetLife's group insurance policy is merely an insurance contract. The insureds under the contract do not enjoy a property interest in it. Unlike a trust, where there is a corpus, a fund out of which beneficiaries are paid, the insurance policy at issue has no class of participants and beneficiaries to whom any benefit will derive except as payment on a claim. The corpus of a trust is administered by a trustee for the dual purpose of protecting the beneficiaries' interest in the fund and to make payments to them in accordance with their interests. Benefits inure to the beneficiaries both through ownership in the corpus and payouts from it as are deemed necessary by a trustee. Contrarily, the claims of claimants (beneficiaries) under the disability insurance policy at

issue in this case, represent only contingent liabilities to MetLife as the insurance company. MetLife manages the risk to the solvency of itself as the insurer. MetLife contracted with Sears to provide benefits to claimants and it has assumed in Sears' stead, the financial risk of providing the benefits promised. Sears does not reimburse MetLife for its payment of claims and, if there is no claim paid, MetLife as the insurer, saves the money in the form of its own assets if it denies or discontinues the claim for benefits.

The policy at issue in this case is a mere insurance policy contract intended by Sears, as the insured, to shift the risk of certain contingencies from the insureds to the insurer. Accordingly, a claim is said to be made *under* the policy but *against* the insurer and, therefore, is to be paid out of the insurer's assets. Because the policy is an unfunded contract providing for contingent payments out of the insurer's assets, the insurer will suffer a loss of assets if a claim is paid to a beneficiary. Therefore, because the insurer's financial interest is best served when a claim is denied, the insurer, a for-profit entity, must take steps to control costs and make coverage decisions based upon a narrow interpretation of the contractual provisions of the contract.

Having considered the contractual relationship between MetLife, the insurer, and Sears, the insured, this court concludes that, under the circumstances of this case, the insurer MetLife is laboring under a conflict of interest when it denies a beneficiary's claim under the Sears LTD Plan. Therefore, this court finds that because a conflict of interest exists, the Eleventh Circuit's heightened arbitrary and capricious level of scrutiny applies when deter-

mining whether the Plaintiff has been wrongfully denied Plan benefits.

■ In the present case, the court finds that, had it determined that the decision was "wrong," this record easily supports a finding that MetLife's decision was reasonable. In making this decision, the court specifically finds that there is adequate support for the decision based on the facts in the record. However, after *Brown*, the law is clear that if there is a conflict of interest as there is in the present case, a finding by the reviewing court that the denial was reasonable is not sufficient by itself to support the administrator's otherwise wrong decision.

### Application of the Heightened Arbitrary and Capricious Standard

Under the heightened arbitrary and capricious standard of review, the Eleventh Circuit holds that when a conflict of interest is present, even if the court determines that a reasonable basis existed for the administrator's decision, the administrator's decision should not necessarily prevail. *Torres v. Pittston Company*, 346 F.3d 1324; *HCA Health Servs. v. Employers Health Ins. Co.*, 240 F.3d at 993; *Brown v. Blue Cross*, 898 F.2d at 1561. Instead, the court must continue its inquiry and gauge the self-interest of the claims administrator. In other words, the reviewing court's decision, when a conflict of interest exists, may not rest merely upon a finding that the administrator's decision was reasonable.[6]

### What Evidence May Be Considered When Applying a Heightened Arbitrary and Capricious Standard?

As set forth above, the law is well settled that when a court initially determines

---

**6.** Of course, as set forth in detail above, if the reviewing court determines (based on the administrative record) that the administrator's decision was correct, then the administrator's

decision will stand, and the court ends its inquiry. Nevertheless, for purposes of providing a full record in the event of an appeal, the court is continuing the analysis.

whether the administrator's denial of the claim was correct or whether it was reasonable, the court's review is limited to the facts before the administrator at the time the decision was made. However, when the court finds that a conflict of interest exists, it raises the issue of what evidence a court may review once it must proceed to the next stage of the *Brown* analysis in which the burden shifts to the defendant and the court must consider the self-interest of the administrator.

Although the Eleventh Circuit has not squarely addressed this issue, it has indicated that evidence outside of the administrative record may ultimately be appropriate in considering whether a claims administrator acted in its own self-interest under the heightened arbitrary and capricious standard. *See Lee v. Blue Cross,* 10 F.3d 1547 (11th Cir.1994). In *Lee v. Blue Cross,* the Eleventh Circuit first acknowledged that it could only look to facts before the administrator at the time the decision was made to determine whether the administrator's decision was "wrong." *Id.* at 1550. However, after determining from the administrative record that the decision to deny benefits was wrong, but reasonable, the court shifted the burden to the conflicted insurance company to prove that its interpretation of the plan was not tainted by self-interest. Recognizing that the district court only applied an arbitrary and capricious standard and not the heightened arbitrary and capricious standard, the *Lee* court remanded the case and directed the district court to apply the "second prong" of the *Brown* analysis. *Id.* Specifically, the Eleventh Circuit directed the district court on remand to "consider evidence presented by (the plaintiff) to rebut (the

defendant's) claims of lack of a profit motive or self-interest and by (the defendant) to demonstrate that its claims decision maximized benefits to participants and beneficiaries." *Id.*

■ Since the district court had already reviewed the administrative record to determine that the administrator's decision was wrong, it follows that the Eleventh Circuit recognized the need for additional evidence, beyond the administrative record, in evaluating the defendant's self-interest. Because evidence regarding these claims of both the plaintiff and the defendant would not ordinarily be expected to be within the administrative record, the only reasonable inference is that it encompasses evidence outside the administrative record. Therefore, this court finds that based upon the inference derived from Eleventh Circuit precedent as set forth in *Lee,* a reviewing court may consider evidence outside the administrative record when it is actually necessary to gauge the self-interest of the administrator and shift the burden to the defendant to prove that its decision did not advance its own interests at the expense of the beneficiary. Accordingly, while the question of what evidence is relevant to ERISA claims of both the plaintiff and the defendant in a case like this remains undecided by the Eleventh Circuit, this court finds that it is necessary to consider evidence outside the administrative record to determine the effect of the administrator's self-interest in rendering a decision from evidence within the administrative record. Such a conclusion is consistent with the inferences set forth in the Eleventh Circuit authority on this issue.[7]

---

7. In further support of this conclusion to consider evidence outside of the administrative record, the court also notes that Eleventh Circuit decisions hold that under the height-

ened arbitrary and capricious review, even if the defendant satisfies its burden and establishes that its decision was not tainted by self-interest, an ERISA claimant may still be suc-

### Burden of Proof Under Heightened Arbitrary and Capricious Standard

■ In *Brown*, the Eleventh Circuit held that a "strong conflict of interest exists when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims." *Id.* at 1568. (emphasis added). *See also, Levinson v. Reliance Standard Ins. Co.*, 245 F.3d 1321, 1325–26 (11th Cir.2001) (holding that when an administrator of a benefit plan governed by ERISA pays participants out of its own assets, a conflict of interest exists between its fiduciary role and its profit-making role, and a heightened arbitrary and capricious standard applies in reviewing administrator's discretionary denial of benefits under the plan.) Thus, once it is established that the claims administrator acts under such a conflict of interest, the *Brown* multi-step approach compels the reviewing court to shift the burden to the defendant to prove that a wrong, but reasonable, decision was not tainted by self-interest. Under Eleventh Circuit authority, the plaintiff need not prove that the defendant's self-interest was in fact a motivating factor in the decision to deny benefits. "[T]he beneficiary need only show that the fiduciary allowed himself to be placed in a position where his personal interest might conflict with the interest of the beneficiary." *Brown*, 898 F.2d at 1565 (11th Cir.1990). Nor does the Eleventh Circuit require a showing of intentional misconduct in order to shift the burden of proof to the defendant to prove that its decision is not tainted by self-interest. For example, in *Shaw v. Connecticut General Life Ins. Co.*, 353 F.3d 1276 (11th Cir.2003), the defendant argued that absent any evidence of bad faith, the court should review a claims administrator's factual determinations under the pure arbitrary and capricious standard. The Eleventh Circuit rejected this argument and noted that the conflict of interest is inherent in the situation, thereby requiring a heightened arbitrary and capricious standard (i.e., application of the burden-shifting approach). This automatic burden-shifting framework underscores the Eleventh Circuit's caution that "a conflicted fiduciary may, consciously or unconsciously, favor its interests over the interests of the plan beneficiaries . . ." and "(i)mproper motives encompasses something different from dishonesty or bad faith" *Brown*, 898 F.2d at 1566. (emphasis added). Therefore, under the Eleventh Circuit law, even a principled fiduciary may unconsciously make decisions that are not solely in the best interest of the beneficiary. The *Brown* court reasoned that "(t)he judicial hesitation to inquire into the fiduciary's motives will leave the beneficiaries unprotected unless the existence of a substantial conflicting interest shifts the burden to the fiduciary to demonstrate that its decision is not infected with self-interest." *Id.* at 1565.

cessful if he or she can show "by other measures that the administrator's decision was arbitrary and capricious." *HCA Health Servs. v. Employers Health Ins. Co.*, 240 F.3d at 995; *Lee v. Blue Cross*, 10 F.3d at 1552; *Brown v. Blue Cross and Blue Shield*, 898 F.2d at 1568. Although no Eleventh Circuit case expressly defines or suggests what "other measures" the claimant may use, it seems that the term must include evidence outside of the administrative record. Otherwise, it would be illogical for the court to look at the administrative record to determine whether the defendant has carried its burden, and then look at the same administrative record to determine whether the plaintiff showed by "other measures" that the decision was not tainted by self-interest. Use of the term "other" indicates that the plaintiff may use supplemental evidence outside the administrative record for the limited purpose of demonstrating that the defendant's self-interest motivated the decision.

When making a determination as to whether the administrator abused its discretion by advancing its own self-interest, a court might consider such evidence as whether the administrator can demonstrate the existence of a routine practice by which it reviews claims, and that it followed that routine practice in the present case. *See Williams v. BellSouth*, 373 F.3d 1132, 1139 (11th Cir.2004). Even a conflicted administrator should receive deference when he demonstrates that he is exercising discretion among choices which reasonably may be considered to be in the overall best interests of the plan participants and beneficiaries. *Brown, supra,* 898 F.2d at 1568. A defendant may satisfy the burden of removing the taint of self-interest by proving that its plan interpretation has the effect of benefiting the class of participants and beneficiaries. The exact nature of information considered by the fiduciary may be relevant if it indicates that the fiduciary ignored pertinent evidence, which suggests that the decision was motivated by self-interest. Additionally, the competency of the claims administrator may be relevant. Evidence that the claims administrators were not qualified to evaluate medical evidence would indicate that the insurance company was not concerned with making its determination objectively. How the fiduciary reached its decision is similar to the inquiry of whether a routine practice or procedure was either followed or disregarded in this particular case. Likewise, a determination of whether it was incumbent upon the fiduciary to seek outside technical assistance in reaching a full and fair review of the claim in this particular case is relevant to the issues of whether a routine process was followed, or whether a good faith effort was made to reach an objective decision.

When a court considers outside-the-record evidence relevant to the administrator's self-interest, the court is only concerned with whether self-interest motivated the administrator's ultimate decision. Accordingly, the court must scrutinize whether the process by which the administrator arrived at its decision was fair and neutral (i.e., not tainted by its self-interest). If the court finds that the evidence supports the conclusion that the decision was not tainted by self-interest, the fact that the court may disagree with the administrator's decision should be irrelevant as long as the decision itself is reasonable and supported by the evidence contained in the administrative record.

### Application of the Law to the Facts of this Case

The ultimate issue in this case which the parties agree must be decided as a matter of law is whether under the heightened arbitrary and capricious standard the Defendant unreasonably terminated the LTD benefits that Plaintiff was receiving. Case law supports the conclusion that it is reasonable for a plan administrator to require objective medical evidence even where the plan does not specifically contain such a requirement. Where a plan requires proof of continued disability, "the very concept of proof connotes objectivity." *Maniatty v. UNUM Provident Corp.*, 218 F.Supp.2d 500, 504 (S.D.N.Y.2002), *aff'd*, 62 Fed.Appx. 413, 2003 WL 21105390 (2d Cir.), cert. denied, 540 U.S. 966, 124 S.Ct. 431, 157 L.Ed.2d 310 (2003). "Were an opposite rule to apply, LTD benefits would be payable to any participant with subjective and effervescent symptomology simply because the symptoms were first passed through the intermediate step of self-reporting to a medical professional." *Coffman v. Metro., Life Ins.* Co., 217 F.Supp.2d 715, 732 (S.D.W.Va.2002), aff'd, 77 Fed.Appx. 174, 2003 WL 22293610 (4th Cir.2003). In the absence of a requirement of objective evi-

dence, the review of claims for long-term disability benefits would be "meaningless because a plan administrator would have to accept all subjective claims of the participant without question." *Williams v. UNUM Life Ins. Co. of Am.*, 250 F.Supp.2d 641, 648 (E.D.Va.2003). Furthermore, the fiduciary role of the plan administrator of scrutinizing claims, protecting the assets of a plan, and paying legitimate claims would be seriously compromised. *Coffman*, 217 F.Supp.2d at 732.

In the present case, MetLife could not terminate the payment of disability benefits in the absence of evidence that the claimant was no longer disabled. *Levinson v. Reliance Standard Life Insurance Co.*, 245 F.3d 1321, 1331 (11th Cir.2001). *Levinson* does not support the proposition that a plan administrator should bear the initial burden of proving that the claimant is no longer entitled to benefits under the Policies. Rather, the plan participant seeking to challenge the plan administrator's denial of benefits must demonstrate that he was entitled to receive the residual disability benefits under the terms of the Policies. *Id.* Therefore, the claimant retains the burden of proving continued disability. *See Calvert v. Firstar Fin., Inc.*, 266 F.Supp.2d 578, 586 (W.D.Ky.2003) (rejecting claimant's argument that there was no change in her medical condition warranting the termination of her benefits because "[u]nder the Plan, [claimant] had the burden to prove her continued disability and [the plan administrator] had the right under the Plan to reexamine the issue of disability at any time").

In the present case, the court finds that a review of all of the evidence in this case easily supports a finding that MetLife conducted an objective evaluation of the Plaintiff's medical conditions in a fair and neutral way. First of all, there is no evidence in this record that handling of the Plaintiff's evaluation was outside of the routine claims administrator's practice. Further, the complete record reveals that MetLife did not ignore the pertinent evidence of the Plaintiff's treating chiropractor, but rather employed outside independent medical examiners to review those findings and to consider them along with the other evidence in the record before arriving at an independent conclusion. Furthermore, the decision to cease benefits in this case was made by nurse consultants who were qualified to evaluate medical evidence and who undertook an objective evaluation of all of the relevant medical evidence, including the evidence offered by the Plaintiff's treating chiropractor. The claims administrator also sought outside technical assistance by employing not one, but two, independent medical examiners who were given all of the available medical evidence and were asked to render an independent opinion as to whether the Plaintiff was disabled under the policy. Finally, the Plaintiff did not show by any other measures outside the administrative record, that MetLife's decision was arbitrary and capricious.

### Conclusion

Based on the record before this court, the court finds that MetLife's decision to terminate Plaintiff's LTD benefits was correct. However, even if the decision was wrong, in light of the ample record evidence supporting the decision, it cannot be said that the decision was unreasonable or arbitrary and capricious, even under the heightened standard of scrutiny. Accordingly, summary judgment will be granted in favor of the Defendant and against the Plaintiff on the ERISA claims.

### *Plaintiff's Motion for Summary Judgment on Defendant's Counterclaim*

After MetLife had terminated the Plaintiff's long term disability benefits under

the LTD as of April 30, 2002, the Defendant became aware that the Social Security Administration had issued a Notice of Award on December 11, 2002, determining Fick to be disabled and entitled to Social Security benefits. MetLife has filed two causes of action against Plaintiff to recover $39,950.00 overpayment caused by Plaintiff's retroactive reward of Social Security Benefits: Count I: a claim for equitable relief under ERISA, and Count II: a claim for unjust enrichment under the federal common law. This court denied the Plaintiff's Motion to Dismiss and determined that both of the claims are viable. The Plaintiff has now moved for summary judgment on these claims.

The LTD provides that Social Security disability benefits are on offset from the LTD benefits payable under the Plan, and provides that MetLife may recoup overpayments caused by payment of Social Security benefits through direct action against the Plaintiff or by offsetting against future benefits. It is undisputed that Plaintiff received a retroactive award of Social Security benefits in the amount of $39,950.00 that covered periods for which Plaintiff's benefits had not been reduced for anticipated Social Security benefits, thereby resulting in an overpayment to Plaintiff.

■ The parties agree that the only dispute regarding the Counterclaim II (federal common law unjust enrichment) is the legal issue of whether MetLife may assert such a cause of action in this ERISA case.

In *Great–West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), the Court addressed the scope of the term "equitable relief" in actions brought by fiduciaries under ERISA, 29 U.S.C. § 1132(a)(3). The Court held that an action for restitution brought under section 1132(a)(3) seeks legal, rather than equitable, relief if it seeks a personal judgment against the defendant from any funds in the defendant's possession. *Id.* at 213–214, 122 S.Ct. 708. The Court clearly stated that an action for restitution is equitable, and therefore permitted under section 1132(a)(3), when it seeks the return of particular funds or property that (a) can be traced to the defendant's possession; (b) belongs in good conscience to the plaintiff; and (c) has not been dissipated. *Id.* Notwithstanding the limitations imposed upon equitable actions under ERISA, the *Knudson* Court does not bar suits for unjust enrichment brought pursuant to federal common law of ERISA. Further, the limitations that the *Knudson* court imposed upon an equitable ERISA action are not applicable in the present case which, as the court set forth in the order denying Plaintiff's Motion to Dismiss Counterclaim is distinguishable from *Knudson*. Accordingly, the court will address Count II of the Counterclaim, the federal common law claim for unjust enrichment.

■ In the present case, the Plaintiff Fick opted to receive her full LTD benefits without any offset for social security (during the pendency of her social security benefits). In so doing, Fick *agreed* to repay the Plan for any overpayment that might be made as a result of her decision not to receive reduced payments.. This option permitted Fick to receive full Plan benefits while awaiting a decision regarding social security, as opposed to having her LTD benefits offset by an estimate of Social Security award.

The court finds that Plaintiff's retention of the overpaid LTD benefits is entirely unjust given her express contractual obligations. Plaintiff affirmatively represented to MetLife that she would repay these benefits upon receiving a retroactive award of Social Security. MetLife relied

upon Plaintiff's representations and advanced her benefits which she was not otherwise entitled to receive. Both the express terms of the Plan and the express terms of the Plaintiff's agreement require Plaintiff to reimburse MetLife for the full value of these benefits which the parties agree is $39,950.00. To order otherwise would result in the Plaintiff's unjust enrichment. Accordingly, Plaintiff's Motion for Summary Judgment is denied and judgment shall be entered against Counter Defendant Fick and in favor of the Counter Plaintiff MetLife. In view of all of the foregoing, it is

ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment as to Counterclaim (DE 24) is DENIED and Defendant's Motion for Summary Judgment (DE 27) is GRANTED. All other motions are denied as moot. The Defendant shall prepare and submit a proposed final judgment consistent with this order for entry by the court.