Teresa **ELDRIDGE**, Plaintiff,

v.

**WACHOVIA CORPORATION LONG-TERM DISABILITY PLAN, et al., Defendants.**

No. CIV.A. 1:04–CV–2082–TWT.

United States District Court, N.D. Georgia, Atlanta Division.

Aug. 23, 2005.

Pamela Ilene Atkins, Kurt Russell Ward, Galler & Atkins, Atlanta, GA, for Plaintiff.

Halima Horton, Mark L. Keenan, McGuire Woods LLP, Atlanta, GA, for Defendants.

### OPINION AND ORDER

THRASH, District Judge.

This is an action for disability benefits. It is before the Court on the Plaintiff's Motion to Dismiss Defendants' Counterclaim and First Amended Counterclaim [Doc. 14]. For the reasons set forth below, the Plaintiff's Motion is GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

Plaintiff Teresa Eldridge began her employment at Defendant Wachovia Corporation in May 1987. She was covered under the Defendant Wachovia Long–Term Dis-

ability Plan ("the Plan"). Defendants Liberty Mutual Insurance Company and Liberty Life Assurance Company of Boston acted as claims administrators of the Plan. Eldridge continued to work at Wachovia until the onset of her alleged disability around October 8, 1999. At that time, Eldridge was a senior vice president at Wachovia.

When Eldridge stopped working for Wachovia, she began to receive short-term disability payments pursuant to Wachovia's non-ERISA payroll plan. Once her short-term disability payments ended, Eldridge was considered for long-term disability ("LTD") benefits. The Defendants approved Eldridge's claim for LTD benefits under the Plan and paid her benefits from July 1, 2000, to around June 1, 2002. (Defs.' First Am. Countercl. ¶ 4.) In 2002, the Defendants reviewed Eldridge's claims and discontinued her benefits. She appealed the denial of benefits, but the decision to terminate benefits was upheld.

On January 7, 2002, Eldridge applied for Social Security disability benefits. The Social Security Administration rendered a decision finding that Eldridge was precluded from working due to her condition and thereby entitled to such benefits. In May 2003, she received a Notice of Award which explained that Eldridge would receive Social Security disability benefits dating back to January 2001. She received these benefits in a lump sum of $33,671.55 representing past due benefits. She received a monthly award of $1,574.00 going forward. For the period between January 1, 2001, through June 1, 2002, Eldridge was awarded both LTD benefits from the Plan in the amount of $3,833.35 per month and retroactive Social Security benefits in the amount of $1,574.00 per month. The Plan documents provide that a participant is required to repay the Plan for any award of Social Security disability benefits that duplicates the participant's

LTD benefits. Eldridge has not, to date, repaid the Plan any amount of Social Security benefits she received that duplicate the LTD benefits received under the Plan.

On July 16, 2004, Eldridge filed suit against the Defendants, asserting claims for wrongful termination of benefits and associated torts. Defendants Wachovia, Liberty Life, and the Plan filed counterclaims to recover duplicative benefits from Eldridge. The Defendants assert claims for restitution, unjust enrichment, and specific performance of the Plan's offset provision. Eldridge moves to dismiss the Defendants' counterclaims.

## II. *MOTION TO DISMISS STANDARD*

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); *see Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Linder v. Portocarrero,* 963 F.2d 332 (11th Cir.1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.,* 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Id.*

## III. *DISCUSSION*

■ The Plaintiff moves to dismiss the Defendants' counterclaims for restitution, unjust enrichment, and specific perform-

ance. She contends that the Defendants assert only legal claims for breach of contract which are not allowed by ERISA. The Defendants style their first counterclaim as a claim for "equitable restitution of duplicative payments." (First Am. Countercl. ¶ 12.) They argue that they are entitled to seek this relief under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Section 502(a) provides, in pertinent part:

> (a) A civil action may be brought ... (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate *equitable* relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a) (emphasis added). The Defendants contend that their claim for restitution is authorized by section 502(a)(3)(B), characterizing restitution as a form of equitable relief. In *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), the Supreme Court rejected a similar argument. It held that the term "equitable relief" in section 502(a)(3) refers only to "those categories of relief that were typically available in equity," *id.* at 210, 122 S.Ct. 708 (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 251, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)), and that "not all relief falling under the rubric of restitution is available in equity." *Id.* at 212. The Court went on to say that "whether [the relief] is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." The Court noted:

> In cases in which the plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received

from him," the plaintiff had a right to restitution at law through an action derived from the common-law writ of assumpsit. In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).

*Id.* at 213, 122 S.Ct. 708. The Court went on to say:

> In contrast, a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.

*Id.* at 213–15, 122 S.Ct. 708 (citations and footnote omitted).

The petitioners in *Knudson* had paid medical expenses for the respondent, a beneficiary under a health plan covered by ERISA. *Knudson,* 534 U.S. at 207, 122

S.Ct. 708. The health plan provided the Plan a right to recover from the beneficiary any payments paid by the Plan and recovered from a third party. *Id.* The petitioners sought to enforce this reimbursement provision. *Id.* But the funds to which the petitioners claimed entitlement were not in the respondents' possession. *Id.* at 214, 122 S.Ct. 708. The Court found that "[t]he basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred." *Id.* This kind of restitution—the extension of personal liability rather than the imposition of a constructive trust on particular property—was a legal, and not equitable, remedy. *Id.* Consequently, the Court held that section 502(a)(3) of ERISA did not authorize the petitioners' claim for restitution. *Id.*

There is a split among the circuits as to whether *Knudson* permits claims for restitution to proceed under section 502(a)(3). The United States Courts of Appeals for the Fourth, Fifth, Seventh, and Tenth Circuits have construed the Court's holding in *Knudson* narrowly. These courts have permitted claims seeking restitution of funds due, so long as such funds are specifically identifiable and are within the possession or control of the beneficiary. *See, e.g., Mid Atl. Med. Services, LLC v. Sereboff,* 407 F.3d 212, 218–19 (4th Cir.2005); *Admin. Comm. of Wal–Mart Assocs. Health & Welfare Plan v. Willard,* 393 F.3d 1119, 1124–25 (10th Cir.2004); *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough,* 354 F.3d 348, 356 (5th Cir.2003), *cert. denied,* 541 U.S. 1072, 124 S.Ct. 2412, 158 L.Ed.2d 981 (2004); *Admin. Comm. of Wal–Mart Stores, Inc. Associates Health & Welfare Plan v. Varco,* 338 F.3d 680, 687–88 (7th Cir.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 2904, 159 L.Ed.2d 828 (2004). They distinguish these cases from

*Knudson,* as the beneficiary in *Knudson* had no control or possession of specifically identifiable funds claimed by the petitioners' plan. *See BlueCross BlueShield of S. Carolina v. Carillo,* 372 F.Supp.2d 628, 635–36 (N.D.Ga.2005) (citing *Bombardier,* 354 F.3d at 356).

The Courts of Appeals for the Sixth and Ninth Circuits have read *Knudson* to establish a broader prohibition on claims to enforce restitution provisions of ERISA plans under section 502(a)(3). *See, e.g., Carpenters Health & Welfare Trust for Southern Cal. v. Vonderharr,* 384 F.3d 667, 672–73 (9th Cir.2004), *petition for cert. filed,* 73 U.S.L.W. 3466 (2005); *Qualchoice, Inc. v. Rowland,* 367 F.3d 638, 649–50 (6th Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1639, 161 L.Ed.2d 510 (2005). In *Rowland,* the Court of Appeals for the Sixth Circuit concluded that where the source of the claim is, as with a subrogation or restitution provision, a contract to pay money, mechanisms for providing equitable relief such as constructive trusts or equitable liens are inappropriate. *Id.* at 649. In *Vonderharr,* the Court of Appeals for the Ninth Circuit held that "[a]ctions by ERISA fiduciaries seeking to enforce an ERISA plan's contractual reimbursement provisions do not fall within § 1132(a)(3)," as these actions do not seek equitable remedies. *Vonderharr,* 384 F.3d at 672 (quoting *Reynolds Metals Co. v. Ellis,* 202 F.3d 1246, 1247 (9th Cir.2000)). Rather, these claims are "nothing more than garden-variety legal claims for contractual restitution that are not cognizable under ERISA." *Id.* at 673.

The Court of Appeals for the Eleventh Circuit has yet to take a position on the issue. In *Flint v. ABB, Inc.,* 337 F.3d 1326, 1330–31 (11th Cir.2003), *cert. denied,* 540 U.S. 1219, 124 S.Ct. 1507, 158 L.Ed.2d 153 (2004), the Court of Appeals observed that the Supreme Court's interpretation of

"appropriate equitable relief" in *Knudson* was "more narrow than the interpretations found in previous decisions by the circuit courts of appeals." The district courts within the Eleventh Circuit are also divided as to whether the Eleventh Circuit would recognize restitution claims brought pursuant to provisions in ERISA plans as cognizable under section 502(a)(3). *Compare, e.g., Carillo,* 372 F.Supp.2d at 637 (adopting restrictive view espoused by the Sixth and Ninth Circuits) *with Space Gateway Support v. Prieth,* 371 F.Supp.2d 1364, 1368 n. 4 (M.D.Fla.2005) (adopting view embraced by the Fifth, Seventh, Eighth, and Tenth Circuits).

■ In this case, it is not necessary to choose between the conflicting lines of authority. Even under the more lenient approach, a claim for restitution, in order to constitute a claim for equitable relief, must seek specifically identifiable property that is within the control or possession of the beneficiary. *Bombardier,* 354 F.3d at 356; *Varco,* 338 F.3d at 687–88. The Defendants do not allege the existence of any specified, identifiable funds presently controlled or possessed by Eldridge. They allege only: (1) that Eldridge physically received both LTD benefits payable under the Plan and Social Security disability benefits for a discrete period of time (First Am. Countercl. ¶ 7); (2) that the Plan requires that her LTD benefits should have been reduced by the amount of Social Security disability benefits received (*id.* at ¶ 3); and (3) that she "knew or should have known to preserve the disputed, duplicative social security disability benefits" (*id.* at ¶ 9). No allegation in the counterclaim suggests that Eldridge did preserve or otherwise segregate these duplicative benefits. Where the subject proceeds have been received by a party and placed into that party's checking or savings account, rather than segregated into an identifiable fund or location, the funds are not "specifically identifiable" for purposes of

section 503(a)(2). *Carillo,* 372 F.Supp.2d at 638. Here, even construing the allegations of the counterclaim in the light most favorable to the Defendants, no allegation suggests that Eldridge holds any separate, identifiable funds or property to which the Defendants are entitled. Consequently, even under the more lenient test, they fail to state a claim for equitable relief under section 502(a)(3). Dismissal of the Defendants' counterclaim for restitution is proper. The Defendants are permitted to amend their counterclaim to allege (subject, of course, to Rule 11) the existence of identifiable funds or property to which it is entitled and thereby cure the deficiencies of its claim for restitution under section 502(a)(3).

■ The Defendants also assert a counterclaim for unjust enrichment. As they cannot characterize this claim as seeking equitable relief pursuant to section 502(a)(3), the Defendants ask this Court to permit their recovery of payments pursuant to federal common law. ERISA, although described by the Supreme Court as a "comprehensive, reticulated statute," contains gaps that Congress expects federal courts to fill with "a federal common law of rights and obligations under ERISA-regulated plans." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 831–32, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Neither the Supreme Court nor the Court of Appeals for the Eleventh Circuit has ruled specifically on whether a claim for unjust enrichment unauthorized under section 502(a)(3) may be asserted under federal common law. As with claims for restitution under section 502(a)(3), there exists a split among circuits as to whether federal common law supports a claim for unjust enrichment based upon an ERISA plan.

In *Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985 (4th Cir.1990), the appellant ERISA plan administrator asserted a claim of unjust enrichment against a beneficiary. *Id.* at 986–88. It sought to recover benefits it advanced to a participant pursuant to a reimbursement provision in its plan. *Id.* The Court of Appeals for the Fourth Circuit recognized the claim, holding that "fashioning a common law rule of unjust enrichment is appropriate in the circumstances of this case." *Id.* at 993. Determining that the claim would advance the equitable administration of plan funds, the Court added a federal common law remedy to the statutory scheme of ERISA. *Id.* at 993–94. Several district courts in the Eleventh Circuit have followed suit and recognized common law actions for unjust enrichment in ERISA cases. *See, e.g., Fick v. Metro. Life Ins. Co.,* 347 F.Supp.2d 1271, 1288–89 (S.D.Fla.2004); *Unum Life Ins. Co. of Am. v. O'Brien,* No. 6:03–CV1433–ORL18DAB, 2004 WL 2283359, at *3–4 (M.D.Fla. Oct. 4, 2004); *but see Prieth,* 371 F.Supp.2d at 1369–70.

The Courts of Appeals for the Fifth, Sixth, Eighth, and Ninth Circuits have held that it is improper to find a remedy of unjust enrichment in the interstices of ERISA or to craft a federal common law remedy of unjust enrichment in ERISA actions. The Sixth and Ninth Circuits have held that a federal common law cause of action for reimbursement or unjust enrichment must invoke a remedy specifically authorized by section 502. *See Rowland,* 367 F.3d at 642; *Pacificare, Inc. v. Martin,* 34 F.3d 834, 836 (9th Cir.1994). The Eighth Circuit has held that "there is no gap in ERISA's text regarding a fiduciary's right to bring a civil action for legal remedies to enforce plan terms or ERISA provisions" and consequently that "a federal common law remedy cannot be recognized." *North Am. Coal Corp. Ret. Sav. Plan v. Roth,* 395 F.3d 916, 917–18 (8th

Cir.) (citing *Knudson,* 534 U.S. at 220–21, 122 S.Ct. 708), *reh'g en banc denied,* (Mar. 18, 2005). In *Cooperative Benefit Administrators, Inc. v. Ogden,* 367 F.3d 323, 330 (5th Cir.2004), the Court of Appeals for the Fifth Circuit held that the text of section 502(a)(3) does not just fail to authorize a claim for unjust enrichment. Rather, the text suggests that Congress chose "to proscribe precisely the type of monetary relief—or legal remedy—" sought in a claim for unjust enrichment. *Id.* at 330.

As mentioned above, the Eleventh Circuit has not ruled on this specific question. The Court of Appeals has, however, suggested that it is hesitant to create or otherwise extend the remedies provided by the ERISA statutory scheme. *See Flint,* 337 F.3d at 1329 (echoing the Supreme Court's unwillingness in *Mertens,* 508 U.S. at 254, 113 S.Ct. 2063, to "infer causes of action in the ERISA context" given the complexity of the statutory enforcement scheme); *Sanson v. Gen. Motors Corp.,* 966 F.2d 618, 622 (11th Cir.1992) ("The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot [or decided not] to incorporate expressly."); *McRae v. Seafarers' Welfare Plan,* 920 F.2d 819, 822 (11th Cir.1991) (barring extra-contractual damages under a federal common law claim and holding that Section 502 defines the specific circumstances upon which one may receive legal or equitable relief). In *Flint,* the Court of Appeals expressed a particular unwillingness to extend the definition of unjust enrichment to include obligations derived from ERISA plans. *Flint,* 337 F.3d at 1331 n. 2. The Court noted that "[w]hen the plaintiff relies on a breach of contract to supply the 'unjustness' of the defendant's holdings, the right on which he or she relies arises from the breach of contract, not

from an unjust enrichment[.]" *Id.* at 1331 n. 2. Recognizing the Eleventh Circuit's hesitance to create federal common law remedies under ERISA and its refusal to infer unjust enrichment based on contractual obligations, this Court finds that creating and applying the remedy of unjust enrichment is not appropriate in this case. Dismissal of the Defendants' counterclaim for unjust enrichment is warranted.

 The Defendants assert a third and final counterclaim for specific performance of the Social Security offset provision of the ERISA Plan. To the extent that this Court awards Eldridge LTD benefits under the Plan, the Defendants seek to have these benefits offset by the amount of the past and future Social Security disability benefits Eldridge received. In *Knudson*, the Supreme Court recognized that a claim for "specific performance of a past due monetary obligation was not typically available in equity." *Knudson*, 534 U.S. at 211, 122 S.Ct. 708 (citations omitted). Rather, equity counseled specific performance only where the claimant "sought to prevent future losses that either were incalculable or would be greater than the sum awarded." *Id.* Here, the Defendants ask this Court to enforce both retroactive and prospective application of the Plan's offset provision. Insofar as the Defendants seek this Court to enforce the contractual provision to permit retroactive offset of calculable past due benefits, they seek legal relief unavailable under section 502(a)(3).[1] Insofar as the Defendants seek an offset of incalculable future LTD benefit payments awarded under the Plan, Eldridge concedes that application of the Plan's offset provision is proper. Consequently, as to the Defendants' counterclaim for specific performance, the Plain-

tiff's motion to dismiss is granted in part and denied in part.

### IV. *CONCLUSION*

For the reasons set forth above, the Plaintiff's Motion to Dismiss Defendants' Counterclaim and First Amended Counterclaim [Doc. 14] is GRANTED IN PART AND DENIED IN PART.

---

1. Given the Eleventh Circuit's hesitance to fashion federal common law remedies to enforce ERISA Plan agreements, this Court shall not recognize or create a federal common law claim for specific performance of the ERISA Plan's offset provision.