Melissa R. BLOOM, Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.

Case No. 11–CV–81393.

United States District Court, S.D. Florida, West Palm Beach Division.

Jan. 23, 2013.

Benjamin C. Hassebrock, Brenton Neil Ver Ploeg, Ver Ploeg & Lumpkin, P.A., Miami, FL.

Jerel Charles Dawson, Jonathan Matthew Fordin, William Joseph Gallwey, III, Shutts & Bowen, Miami, FL, for Defendant.

***OMNIBUS ORDER DENYING PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD; DENYING DEFENDANT'S MOTIONS TO STRIKE; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT***

KENNETH L. RYSKAMP, District Judge.

**THIS CAUSE** comes before the Court on parties' cross motions for summary judgment [**DE 42, 46**] filed on October 31, 2012 and November 1, 2012. Also before the Court is Plaintiff's motion to supplement the administrative record [**DE 72**] filed on December 20, 2012, and Defendant's motions to strike exhibits to Plaintiff's motion for summary judgment and Plaintiff's response in opposition to Defendant's motion for summary judgment. *See* [**DE 54, 69**]. The motions are fully briefed, and a hearing was held on Janu-

ary 11, 2013. These matters are ripe for adjudication.

## I. Background

Plaintiff Melissa R. Bloom ("Bloom") brought this action against Defendant Hartford Life and Accident Insurance Company ("Hartford") for wrongful termination of long-term disability benefits pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Bloom was a speech pathologist and participant in an employee welfare benefit plan established by her employer. As such, Bloom had coverage for long-term disability benefits under a group insurance policy issued by Hartford, which served as the claim administrator for the plan. The policy provided Hartford with "full discretion and authority" to determine entitlement to disability benefits under the plan, which stipulated payment of such benefits on a participant's satisfactory and continued proof of disability. Under the policy, disability was defined as follows:

> Disability or Disabled means You are prevented from performing one or more of the Essential Duties of:
>
> 1) Your Occupation during the Elimination Period;
>
> 2) Your Occupation, for the 24 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Predisability Earnings; and
>
> 3) After that, Any Occupation.

Further, the policy defined "Your Occupation" as:

> Your Occupation means Your Occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job You are performing for a specific employer at a specific location.

On March 17, 2009, Bloom suffered a "transient ischemic attack"—i.e., a mini-stroke—or some other cerebralvascular accident while driving with her son. She checked in at the hospital and complained of weakness and numbness in her right-side and slurred speech. Besides some right-sided numbness, her symptoms had resolved by the time she was evaluated. The hospital conducted an EEG and MRI and CT scans of the brain. The EEG registered normal and the MRI and CT scans each registered negative. Bloom was deemed "neurologically stable" by the treating neurologist, Dr. Shiftan, and was released from the hospital on March 20, 2009.

On January 28, 2010, Bloomed discontinued work as a speech pathologist. Dr. Shiftan, who remained her attending physician, diagnosed Bloom with "late effects" of a cerebrovascular accident, with a secondary diagnosis of "complex partial seizures" resulting in fatigue, memory loss, and right-sided weakness and numbness. He reported that Bloom had no physical defects, but she had cognitive impairment due to memory deficit and dysphasia (trouble communicating). As a result, Bloom applied to Hartford for long-term disability benefits in June 2010. After reviewing her application and concluding that Bloom could not work due to uncontrolled seizure activity, Hartford approved Bloom's claim on August 3, 2010.

In an initial telephone interview with Hartford, Bloom reported her seizures as "hit or miss," and noted that they "var[ied] from day to day." Further, she stated that on days when she did not have a seizure she was able to perform most tasks independently. In light of what Hartford determined were "subjective complaints of seizures," however, video surveillance was conducted on Bloom on November 29 and 30, 2010. During these two days, Bloom

was recorded driving nearly 90 miles, much of the time alone. She shopped, performed various errands, and visited with friends. There was no evidence that Bloom suffered a seizure or that she was restricted from completing physical or focus-oriented tasks, like driving, during the period she was under surveillance. In a follow-up interview conducted by a Hartford investigator Bloom was shown the surveillance video, but she defended that it was consistent with her original statements that her seizure activity was sporadic and she was capable of performing most activities independently on days when they did not occur.

On May 18, 2011, Hartford referred Bloom to an independent medical examination ("IME") performed by Dr. Grossman, a neurologist. After examining Bloom and reviewing her medical records, Dr. Grossman concluded that Bloom "should be able to work full-time without restrictions . . . ." Dr. Grossman noted that her neurological exam was normal and the diagnosis of her treating physician, Dr. Shiftan, was "strictly subjective" and "primarily historical only." He stated he was "hard pressed to consider and agree with [Dr. Shiftan's] diagnosis" without objective evidence to substantiate Bloom's subjective complaints. Dr. Grossman also reviewed the surveillance video and found that Bloom's manipulative capacity was normal and her manual dexterity was excellent.

Hartford sent Dr. Shiftan a copy of the IME report on June 1, 2011 and requested his comments, but it did not receive a response. Therefore, on June 28, 2011, Hartford notified Bloom of its decision to terminate her benefits. In its denial letter, Hartford detailed the findings of the surveillance video and Dr. Grossman's report, and it concluded that Bloom did not establish she was no longer prevented from performing the essential duties of her job, and therefore, she did not meet the policy definition of disability. Hartford informed Bloom of her right to appeal its decision, which she did on July 12, 2011.

In her appeal letter, Bloom emphasized the sporadic nature of her seizures and their manifestation as a cognitive deficit, not a physical incapacitation. Furthermore, Bloom claimed that she experienced "auras" before a seizure would occur, and thus, she would avoid activities she otherwise would be capable of doing during those times, like driving. Bloom included testimonial letters from family and friends attesting to her seizures and her cognitive problems. Additionally, Bloom submitted a letter from Dr. Shiftan, in which he stated that Bloom experienced "frequent seizures" and was unable to work due to difficulty with speech and concentration. He noted in the letter that Bloom's ambulatory EEG taken during her initial incident was abnormal.

In evaluation of Bloom's appeal, a medical records review was performed at Hartford's request by Dr. Engstrand, a neurologist. Dr. Engstrand reviewed Bloom's medical files, including past reports by Dr. Shiftan and the IME by Dr. Grossman, and watched the surveillance video. Dr. Engstrand attempted to contact Dr. Shiftan on numerous occasions to consult with him about Bloom's condition, but Dr. Shiftan did not return her calls. In a report issued on October 5, 2011, Dr. Engstrand concluded that Bloom was "not functionally impaired or limited in any way." She stated that while Bloom may have suffered an episode of "transient right-sided weakness"—albeit unclear whether it was a stroke, cerebralvascular accident, seizure activity, or a complex migraine—her condition and functional ability were excellent and there was "no evidence of cognitive impairment." She characterized Bloom's reports of seizures as "subjective," and

found that they were inconsistent with her clinical findings. She finished by stating that Bloom could work "an eight hour work day, 5 days a week on a continuous basis without restrictions and limitations."

On October 6, 2011, Hartford denied Bloom's appeal, stating that "there does not appear to be any clinical or radiographic evidence that [she] actually suffers from seizures." Bloom brought this suit claiming that Hartford's decision to terminate her benefits was wrong and arbitrary and capricious, and that Hartford failed to provide Bloom a full and fair review of her claim. Particularly, Bloom contends: (1) the administrative record contains evidence of Bloom's disability; (2) Hartford failed to obtain objective evidence supporting Bloom's disability, namely, her abnormal ambulatory EEG and a failure to conduct a neuropsychological exam; (3) Hartford improperly initiated surveillance and used the surveillance video as a basis for her benefits-termination; (4) Hartford failed to acknowledge consideration of Bloom's Social Security Disability ("SSD") award in its termination letter in violation of company policy; and, (5) Hartford failed to employ a "perfection statement" to notify Bloom of information absent from the administrative record. Bloom requests that the Court reverse Hartford's determination and reinstate her long-term disability benefits, or in the alternative, remand the case back to Hartford to reconsider her claim with additional evidence.

In response, Hartford contends that Bloom did not prove she was disabled under the plan, and it was not wrong to credit the surveillance video and opinions of two independent doctors over Bloom's subjective complaints and the reports of her treating physician. Furthermore, Hartford maintains that it was not obligated to build Bloom's case for her and find objective evidence to support her claim. Hartford argues that Bloom improperly relies on evidence outside the administrative record in an attempt to bolster her claim, and that ultimately, Bloom fails to demonstrate that its decision to terminate her benefits was arbitrary and capricious.

## II. Legal Standard on Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at

586, 106 S.Ct. 1348. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Id.* at 587, 106 S.Ct. 1348 (citing FED.R.CIV.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990). If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

### III. Discussion

#### A. Consideration of Materials Outside the Administrative Record

■ Bloom requests the Court to consider materials outside of the administrative record in reviewing Hartford's decision. Specifically, Bloom requests that the Court admit medical records evidencing Bloom's seizure debility, including an abnormal ambulatory EEG and a recent hospital report documenting post-operative seizure activity. Moreover, Bloom seeks to introduce as exhibits to her motions multiple documents produced by Hartford during discovery. These, Bloom claims, support her argument that Hartford failed to provide a full and fair review of her claim and violated its own claims practices in reaching its decision to terminate her benefits. The exhibits include: (1) a page from Hartford's claim manual detailing its

use of a "perfection statement" to notify claimants of missing information, *see* Ex. A. to Pl.'s Resp. to Def.'s Mot. for Summ. J. **[DE 65]**; (2) Hartford's internal training guideline concerning seizure disorders introduced to support the contention that a stroke may cause seizures and not all seizure activity may be recorded, *see* Ex. O **[DE 46–3]**; (3) the deposition transcript of a Hartford representative introduced to demonstrate procedural irregularities in Hartford's determination, *see* Ex. V **[DE 46–5, 6]**; and (4) excerpts from Hartford's claim manual requiring a claimant's termination letter to include language indicating Hartford considered the claimant's SSD award prior to terminating her benefits. *See* Ex. W **[DE 46–7]**. Hartford contests supplementing the administrative record with Bloom's additional medical reports and moves to strike the above exhibits.

■ As a general rule, deferential review of a plan administrator's[1] decision to deny benefits is limited to "consideration of material available to the administrator at the time it made its decision," *Blankenship v. Metro. Life Ins. Co.,* 644 F.3d 1350, 1354 (11th Cir.2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 849, 181 L.Ed.2d 549 (U.S. 2011), i.e., the administrative record. Thus, in a "very real sense," the district court "sits more as an appellate tribunal than as a trial court." *Epolito v. Prudential Ins. Co. of Am.,* 737 F.Supp.2d 1364, 1369 (M.D.Fla.2010) (internal citation omitted). The Court "does not take evidence, but rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the [administrator]." *Id.* As the First Circuit explained:

> It would offend interests in finality and exhaustion of administrative procedures

---

1. Here, Hartford is the plan administrator, vested with "full discretion and authority" to

determine entitlement to disability benefits under the plan.

required by ERISA to shift the focus from that decision to a moving target by presenting extra-administrative record evidence going to the substance of the decision. . . . Even if the new evidence directly concerned the question of his disability before the final administrative decision, it was inadmissible. Furthermore, the final administrative decision acts as a temporal cut off point. The claimant may not come to a court and ask it to consider post-denial medical evidence in an effort to reopen the administrative decision.

*Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 519 (1st Cir.2005) (internal citation omitted), *cert. denied*, 546 U.S. 937, 126 S.Ct. 425, 163 L.Ed.2d 324 (2005).

■ Thus, under the deferential standard of review provided to administrators, the rule against consideration of extra-record materials to determine a claimant's eligibility for benefits prevents post-hoc relitigation of the substantive claim and encourages a full development of the record before the administrator. *See Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1308 (10th Cir.2007)("And if litigation should ensue, requiring the parties to have developed the record during the claim administration process deters the practice of holding back evidence for presentation to the district court as a fallback or a 'surprise.' "). It does not appear, however, that the rule precludes the admissibility of evidence to support a claimant's collateral assertion of an administrator's procedural misconduct or bias.

The Eleventh Circuit has not yet weighed in on the matter, but the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008) "can be read as contemplating some discovery on the issue of whether a structural conflict has morphed into an actual conflict" and

procedural irregularities threaten the fair resolution of a claim. *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1161 (10th Cir.2010). In pertinent part, *Glenn* reads:

> In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tie-breaking factor's inherent or case-specific importance. The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. . . . It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision-making irrespective of whom the inaccuracy benefits.

*Glenn*, 554 U.S. at 117–18, 128 S.Ct. 2343 (internal citations omitted).

Relying on this language, district courts and sister circuits have carved out exceptions for claims alleging procedural irregularities and conflicts of interests affecting a claimant's full and fair review. *See Murphy*, 619 F.3d at 1161 (10th Cir.2010) ("[a]lthough the Supreme Court did not explicitly state that the district court could consider extra-record materials or that claimant could discover extra-record materials [in *Glenn* ], it must have contemplated that, at least in some cases, discovery and consideration of extra-record materials may be necessary and appropriate as an administrative record is not likely to con-

tain the details of a history of biased administration of claims"); *Johnson v. Conn. Gen. Life Ins. Co.*, 324 Fed.Appx. 459, 466–67 (6th Cir.2009) (holding that *Glenn* abrogated any prior precedent of the Sixth Circuit requiring "a threshold evidentiary showing of bias as a prerequisite to discovery"); *Wilcox v. Wells Fargo & Co. Long Term Disability Plan*, 287 Fed.Appx. 602, 603 (9th Cir.2008) (concluding that *Glenn* endorsed Ninth Circuit precedent that "a district court could, in its discretion, consider extrinsic evidence in evaluating the conflict's effects"); *Brantley v. Pepsi Bottling Grp., Inc.*, 718 F.Supp.2d 903, 906 (E.D.Tenn.2010) (holding that a district court should limit its review under ERISA to the administrative record unless the evidence is offered to support a procedural challenge to the administrator's decision, such as alleged lack of due process or bias); *Price v. Hartford Life and Acc. Ins. Co.*, 746 F.Supp.2d 860, 862 (E.D.Mich. 2010) (permitting additional evidence where a plaintiff brings procedural challenges to administrator's decision); *Allen v. Life Ins. Co. of N. Am.*, 267 F.R.D. 407, 412 (N.D.Ga.2009) (permitting evidence relevant to an administrator's conflict of interest in the decisionmaking process). *See generally* 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2005 (3d ed.1998); JAYNE E. ZANGLEIN ET AL., ERISA LITIGATION 524–35 (4th ed.2011). Moreover, even before *Glenn,* circuits maintained exceptions for the consideration of extra-record evidence when plaintiffs averred procedural indiscretion or bias on the part of an administrator. *See, e.g., Abatie v. Alta Health & Life Ins.*

*Co.*, 458 F.3d 955 (9th Cir.2006) (en banc); *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805 (7th Cir.2006), *cert. denied,* 549 U.S. 942, 127 S.Ct. 53, 166 L.Ed.2d 251 (2006); *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510 (1st Cir.2005), *cert. denied,* 546 U.S. 937, 126 S.Ct. 425, 163 L.Ed.2d 324 (2005).

Based on the Supreme Court's decision in *Glenn* and its progeny, the Court finds that extra-record evidence is admissible where Bloom can demonstrate the evidence will be used to support a claim of procedural misconduct or bias on the part of Hartford.[2] Thus, the Court will permit extra-record materials pertaining to Bloom's accusations that Hartford deviated from its own claims practices, and thus, failed to provide a full and fair review. The Court will not permit, however, extra-record evidence offered to substantively impact her eligibility for benefits, i.e., evidence introduced to show she was or was not disabled. As stated by another court:

> Normally, in ERISA benefits denial cases, matters outside the administrative record are not discoverable .... Where, however, the plaintiff alleges a procedural defect in the administrative process, then matters pertaining to that process become relevant .... [T]his fact does not, however, mean that the entire universe of relevant evidence is opened up for discovery.... Discovery into the substantive merits of a claim are still off limits—unless, of course, the court finds a serious procedural deficiency exists requiring substantive supplementation of

---

**2.** The Court's finding is not exclusive. There may be other circumstances where a court finds it appropriate to permit extra-record evidence or supplement the administrative record. For example, in *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir.2008), the Ninth Circuit held that where an administrator raises a new reason for denying benefits for the first time in an appeal determination, and where the appeal determination is otherwise substantially deficient, a court may permit the claimant and the administrator to submit new evidence bearing on that issue to the court for its consideration. *Saffon,* 522 F.3d at 874 n. 6.

the administrative record for a full and fair review.

*Myers v. Prudential Ins. Co. of Am.*, 581 F.Supp.2d 904, 913 (E.D.Tenn.2008).[3]

■ Therefore, the Court allows Bloom to introduce those exhibits and deposition testimony into evidence which support her claim of procedural misconduct on behalf of Hartford.[4] These extra-record documents, as listed above, include: (1) a page from Hartford's claim manual concerning its use of a "perfection statement," *see* Ex. A. to Pl.'s Resp to Def.'s Mot. for Summ. J. [**DE 65**]; (2) Hartford's internal training guideline concerning seizure disorders, *see* Ex. O [**DE 46-3**]; (3) the deposition transcript of a Hartford representative, *see* Ex. V [**DE 46-5, 6**]; and (4) excerpts from Hartford's claim manual regarding explicit recognition of the consideration of Bloom's SSD award in her termination letter. *See* Ex. W [**DE 46-7**]. The Court does not permit Bloom to supplement the administrative record with medical records of her abnormal ambulatory EEG or hospital reports of post-operative seizure activity. These latter documents are produced in an after-the-fact attempt to retroactively impact the substantive merits of her claim, and thus, are impermissible. The controlling rule still remains: the Court reviews the administrator's decision to terminate benefits in light of the evidence before it at the time the decision was made. *See Blankenship*, 644 F.3d at 1354. The burden lies with Bloom to obtain evidence to prove her disability at the time of the administrator's review, *see Glazer v. Reliance Standard Life Insurance*, 524 F.3d 1241, 1247 (11th Cir.2008), and these records are not necessary to support her claims for procedural misconduct. Thus, the Court denies Bloom's motion to supplement the administrative record [**DE 51**] and denies Hartford's motions to strike Bloom's exhibits [**DE 54, 69**].

### B. ERISA Review of Hartford's Decision to Terminate Benefits

■ The Eleventh Circuit lays out a six-step analysis for reviewing a benefits decision under ERISA:

(1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

---

3. The court's reference to "discovery" of extra-record evidence implies its admissibility.

4. The Eleventh Circuit provides there is an inherent, or structural, conflict of interest where the ERISA plan administrator both makes eligibility decisions and pays awarded benefits out of its own funds, as is the case here. *Blankenship*, 644 F.3d at 1355. Thus, the Court permits extra-record evidence in light of this fact. The Court does not address whether it is appropriate to supplement the administrative record in cases where no structural conflict of interest exists, i.e., the plan is self-funded by the employer. Case law suggests that *Glenn* stands for the proposition that discovery of matters outside the administrative record is permissible only when such a conflict of interest exists. *See Glenn*, 554 U.S. at 117–18, 128 S.Ct. 2343; *Worsley v. Aetna Life. Ins. Co.*, 780 F.Supp.2d 397, 408 (W.D.N.C.2011) (holding that *Glenn* permits supplementation of the administrative record "regarding the procedural safeguards it has implemented to ensure that its inherent structural conflict of interest does not lead to biased claim determinations"). Notably, the Tenth Circuit recently refused to consider "a variety of bias-related information from depositions, testimony, and judicial opinions in other cases" where, because the plan was self-funded by the employer, the court found that "any conflict of interest is more attenuated than in other ERISA cases," and thus, "the rationale for considering extra-record evidence ... is diminished." *Williams v. Metro. Life Ins. Co.*, 459 Fed.Appx. 719, 728 (10th Cir.2012).

(2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship,* 644 F.3d at 1355.

Under this framework, Bloom initially bears the burden to prove that she is disabled and Hartford's decision to deny her long-term disability benefits was wrong. *See Glazer,* 524 F.3d at 1247. If Bloom meets her burden, then she must demonstrate that Hartford's decision was arbitrary and capricious, meaning Hartford had no reasonable grounds to support its decision. *Id.* at 1246. In considering whether Hartford's decision was arbitrary and capricious, the Court must take into account Hartford's conflict of interest in paying Bloom's claim, but its analysis remains centered on whether a reasonable basis existed for Hartford's decision. *See Blankenship,* 644 F.3d at 1355. Even where a conflict of interest exists, the Court must still give deference to Hartford's "discretionary decisionmaking" as a whole. *See Doyle v. Liberty Life Assur-*

*ance Co. of Boston,* 542 F.3d 1352, 1363 (11th Cir.2008).

### i. Hartford's Decision to Deny Benefits was Not Wrong

■ Upon review of the facts, the Court finds that Bloom fails to prove she was disabled at the time her benefits were terminated. Therefore, the Court holds that Hartford's decision was not "wrong." Among the evidence relied upon by Hartford to deny Bloom's claim was a surveillance video of Bloom driving and performing other focus-oriented activities and the reports of two independent physicians, each concluding that Bloom was not disabled and there was no objective evidence supporting her claim of seizure activity or related cognitive impairment.

■ Driving is a "dangerous activity that requires the utmost focus." *Hillyer v. Hartford Life and Acc. Ins. Co.,* 2011 WL 925027, *14 (N.D.Ala. Jan. 31, 2011). Courts have upheld decisions to deny benefits for seizure related disabilities where there was "no indication the claimant's driving was ever restricted." *Deel v. United of Omaha Life Ins. Co.,* 2012 WL 928349, *6 (E.D.Mich. Feb. 27, 2012); *see Hobson v. Metro. Life Ins. Co.,* 574 F.3d 75, 87 (2d Cir.2009). Moreover, while surveillance evidence "is of limited utility . . . . where the evidence obtained during surveillance is not inconsistent with the claimant's own account of her activities,'" *Marantz v. Permanente Medical Group, Inc. Long Term Disability Plan,* 687 F.3d 320, 329 (7th Cir.2012), it may be used in conjunction with other medical evidence to support an administrator's decision to terminate benefits. *See id.; Green v. Union Sec. Ins. Co.,* 646 F.3d 1042, 1052 (8th Cir.2011)(stating video evidence need not conclusively establish a claimant's disability, but it does provide another form of objective evidence upon which an ERISA

administrator may base its claims determination). When considering the medical opinions of its independent doctors as evidence to support its determination, the plan administrator "need not accord extra respect to the opinions of a claimant's treating physicians" and "may credit[ ] those opinions over the opinions of [the claimant's] doctors." *Blankenship*, 644 F.3d at 1356.

Here, the surveillance video demonstrated no objective evidence that Bloom suffered from seizures or was cognitively impaired. In the video she talked on her cell phone, shopped, visited with friends, unloaded chairs from the back of her car, and drove almost 90 miles in two days. Notably, the surveillance video contradicts the findings of her treating physician, Dr. Shiftan, who states in his appeal letter to Hartford that Bloom suffers absence seizures almost daily. The video evidence is not conclusive. As Bloom explained in a post-surveillance interview, the activities witnessed were not inconsistent with her initial reports that her seizures were "hit or miss" and she was capable of performing most tasks independently when she did not experience a seizure. When taken in conjunction with the conclusions reached by Hartford's two independent physicians that Bloom was not disabled and there was no finding of cognitive impairment, however, the surveillance video becomes a reliable form of evidence contradicting Bloom's disability claim. Thus, the Court cannot say that Hartford was wrong in relying on this evidence in terminating Bloom's benefits.

Furthermore, the Court finds that Hartford was not wrong in crediting the opinions of its reviewing physicians over that of Dr. Shiftan's. *See Giertz–Richardson v. Hartford Life & Acc. Ins. Co.,* 536 F.Supp.2d 1280, 1291 (M.D.Fla. 2008)("While Plaintiff's doctors believe

that Plaintiff was unable to work, it was not wrong for Defendant to credit the opinions of the [ ] doctors that reviewed Plaintiff's medical records over the opinions of Plaintiff's doctors."). As noted above, Dr. Shiftan's reports of Bloom's inability to work due to daily seizures are belied by the surveillance video evidence. Moreover, Dr. Shiftan's diagnosis, which does not by itself establish a disability, *Jordan v. Northrop Grumman Corp.,* 370 F.3d 869, 880 (9th Cir.2004), is undermined by the fact that it was labeled by Drs. Grossman and Engstrand as solely subjective, and was based "on [Bloom's] subjective reports [which] are inconsistent with the clinical findings." Both doctors found there was no objective evidence to support Bloom's claims of seizures and related cognitive impairment, and they both concluded that Bloom could work without restriction or limitation. Thus, while Hartford was obligated to consider Dr. Shiftan's diagnosis and the letters from family and friends attesting to Bloom's disorder, it was not wrong to rely on the surveillance video and opinions of two independent physicians to conclude that she did not, in fact, meet her burden in proving that she could not perform the essential duties of her job and thus was disabled.

Bloom makes several substantive attacks on Hartford's decision. Bloom claims that Hartford "inexplicably reversed course" when it first approved her claim for long-term disability benefits and later terminated it. She claims that Hartford wrongfully terminated her claim based on a lack of objective evidence of her disability, in that it failed to obtain available diagnostic evidence to establish her disability, namely, an abnormal ambulatory EEG and a neuropsychological examination. Furthermore, Bloom claims that the medical opinions of Drs. Grossman and Engstrand are unreliable, as both doctors

opinions were biased from viewing Bloom's surveillance video.

■ First, under the plan, Bloom's benefits are contingent on her continuing proof of disability. Her burden is the same whether Hartford "denies a claim initially or decides to discontinue benefits after initially approving them." *Richards v. Hartford Life and Acc. Ins. Co.*, 356 F.Supp.2d 1278, 1284 (S.D.Fla.2004), *aff'd*, 153 Fed.Appx. 694 (11th Cir.2005). Therefore, Hartford's prior approval of benefits does not prevent it from "subsequently finding [a] claimant fails to show ongoing disability." *Meadows v. Am. Airlines, Inc.*, 2011 WL 1102774, *20 (S.D.Fla. Mar. 24, 2011). Importantly, Hartford's initial decision to approve Bloom's benefits was based on its conclusion that she could not work due to uncontrolled seizure activity, a determination founded on Dr. Shiftan's treatment notes of Bloom's self-reported complaints. Its latter decision to terminate her benefits, however, was based on subsequent contradicting evidence, namely, a surveillance video and an IME which indicated Bloom suffered no impairment of any kind whatsoever. Thus, the information Hartford had before it at the time of its initial decision to approve benefits and at the time of its decision to terminate benefits was drastically different. Hartford, therefore, cannot be "bound" by its prior decision to approve Bloom's benefits, and Bloom's argument to the contrary misunderstands the burdens allocated to the claimant and the administrator during the claims process. That is, Bloom "retains the burden of proving continued disability" and Hartford "has no burden of proving a change in [her] condition to justify benefits termination." *Clark v. Hartford Life and Acc. Ins. Co.*, 2006 WL 890660, *5 (M.D.Fla. Apr. 6, 2006), *aff'd*, 195 Fed. Appx. 932 (11th Cir.2006) (citation omitted).

■ Considering the foregoing, Hartford was not wrong to terminate Bloom's benefits on her failure to demonstrate objective proof of her disability. "[W]here the plan puts the burden on the claimant to prove that she is disabled, it is implicit in the requirement of proof that the evidence be objective." *Watts v. BellSouth Telecomms., Inc.*, 218 Fed.Appx. 854, 856 (11th Cir.2007). And where a condition is subjective in nature, "it is reasonable to expect objective medical evidence of an inability to work." *Creel v. Wachovia Corp.*, —— Fed.Appx. ——, ——, 2009 WL 179584, *9 (11th Cir. Jan. 27, 2009). Here, Drs. Grossman and Engstrand found Dr. Shiftan's medical reports of Bloom's conditions to be "subjective," noting that his reports were "primarily historical" and that Bloom's "subjective complaints are inconsistent with the clinical findings." While Bloom introduced testimonial letters from family and friends attesting to her seizures and cognitive dysfunction resulting therefrom, an examination conducted by Dr. Grossman and a medical review by Dr. Engstrand found no corroborative evidence to support their testimony. In fact, medical tests conducted on Bloom by Dr. Grossman demonstrated no abnormalities suggesting a seizure disorder or cognitive impairment, at all.[5] While Dr. Engstrand noted there "was a question of a mild hypercoagulable state," she found it clinically insignificant and able to be treated with aspirin. Simply put, the Court cannot find that Hartford was wrong to consider the subjective evidence presented by

---

5. Bloom and a friend claim that Dr. Grossman stated she was disabled following the examination. The Court finds that Hartford was not wrong to rely on Dr. Grossman's written, signed report instead of the alleged verbal statements made to Bloom after her examination.

Bloom as insufficient to demonstrate proof of her disability, particularly in light of the lack of objective evidence supporting her claims. *See Fick v. Metro. Life Ins. Co.*, 347 F.Supp.2d 1271, 1286 (S.D.Fla.2004) (finding that a claim administrator may require objective medical evidence in order to prevent benefits "payable to any participant with subjective and effervescent symptomology merely because the symptoms were first passed through the intermediate step of self-reporting to a medical professional") (citation omitted).

Furthermore, Hartford was not required to obtain objective evidence to support Bloom's claim. *See Wright v. Hartford Ben. Mgmt. Servs.*, 2012 WL 1680094, *7 (D.N.J. May 11, 2012). As stated above, Bloom retains the burden to prove she is disabled under the plan. Therefore, it was her duty to introduce evidence sufficient to support a finding that she was disabled at the time her claim determination. Bloom's contention that Hartford may not rely on a lack of objective evidence to terminate her benefits where it failed to obtain her abnormal ambulatory EEG and to conduct neuropsychological testing, then, is unpersuasive.

Moreover, the only mention of Bloom's abnormal EEG was contained in Dr. Shiftan's appeal letter, which in one sentence he stated: "In addition, her ambulatory EEG was abnormal." Dr. Shiftan did not ascribe any particular significance to test, and it was not provided with his letter. Furthermore, Dr. Engstrand attempted to contact Dr. Shiftan on numerous occasions after he submitted his appeal letter to discuss Bloom's claim, but he did not return her calls. To hold Hartford responsible for knowing this evidence was material and for collecting it "misinterprets an ERISA administrator's role in the decisionmaking process." *Sell v. UNUM Life Ins. Co. of Am.*, 2002 WL 31630707, *7 n. 4 (E.D.Pa.2002).

Hartford could have referred Bloom for neuropsychological testing, but the Court does not find that its decision to forego such testing was wrong. Hartford prepared a referral form to send Bloom to a neuropsychologist for cognitive testing and its representative testified that a neuropsychological exam could be expected to be performed in a situation where a claimant's treating physician reported cognitive impairment but not formal testing had been done. But, Dr. Grossman performed a standard neurological exam on Bloom and found no evidence to suggest Bloom had a seizure disorder or any cognitive abnormalities. Moreover, surveillance indicated no evidence of seizure activity; rather, Bloom appeared completely normal, capable of performing high-functioning tasks, such as driving. In light of this evidence, Hartford may have decided neuropsychological testing was not necessary. Or, Hartford may have decided a file review by Dr. Engstrand, who found no evidence of seizures or cognitive impairment, may have been more a more reliable form of assessing Bloom's condition. As Bloom indicates, Hartford's training guidelines state that "not all neurological seizure activity shows up on electrographic recordings." Given this, the Court cannot say Hartford was wrong in choosing a file review over neuropsychological testing.

In any event, as discussed below, Hartford's failure to conduct neuropsychological testing certainly does not result in a finding that Hartford's decision to terminate benefits on the evidence before it was arbitrary and capricious. *See Blankenship*, 644 F.3d at 1357 ("[W]e do not conclude ... that [the administrator's] use of "file" reviews by its independent doctors— instead of live, physical examinations of [the claimant]—counted as evidence that

[the administrator] acted arbitrarily and capriciously . . . ."). Hartford relied on the opinions of two independent doctors and a surveillance video to terminate Bloom's benefits. Furthermore, Bloom has made no showing that neuropsychological testing *would* result in reliable and objective evidence to support her claim of disability. The mere possibility that such testing would reveal neurological seizure activity does not prove that those seizures would be of such frequency and severity to render her disabled. Her hypothetical is not enough, in this case, to overturn Hartford's reasoned determination. Ultimately, Hartford was "under no duty to conduct its own investigation or gather more information as long as its decision based on the information available [was] not arbitrary and capricious." *Eppley v. Provident Life and Acc. Ins. Co.,* 789 F.Supp.2d 546, 573 (E.D.Pa.2011).

Finally, Bloom claims that the independent medical opinions on which Hartford relied were unsupportable and unreliable; however, she draws no evidence from the record to support her claim. Dr. Shiftan, Bloom's treating physician, saw her once a month, and therefore, relied mainly on her self-complaints as a basis for his diagnosis. To the contrary, Drs. Grossman and Engstrand considered a whole body of evidence, including Dr. Shiftan's treatment notes, Dr. Grossman's IME, and direct observations of Bloom via surveillance video to determine that Bloom lacked clinical support for her disorder. Bloom argues their opinions are prejudiced because they relied on the surveillance video provided by Hartford without her statements given in a follow-up interview in which she states the video is consistent with her claims of the "day-to-day" nature of her seizures. This claim is belied by evidence in the record, however. It is clear that both doctors were aware of the reported sporadic nature of Bloom's seizure disorder at the time of their review, with Dr. Engstrand specifically noting "[Bloom] states that a video investigation missed her bad days" and "tries to avoid driving." Therefore, the Court does not find Hartford was wrong to provide those doctors with the video as a form of objective evidence on which to inform their opinions.

Bloom's further attempts to discredit the medical opinions of Hartford's independent physicians are unpersuasive. She introduces Hartford's deposition testimony and internal training manual as sources which support her claim that a disability claim can be supported by subjective evidence alone and that seizure activity cannot always be objectively recorded. Even in light of this evidence, however, one does not, and cannot, jump to the conclusion that a disability claim can always be supported on subjective evidence alone, or that seizure activity can never be objectively recorded. Here, Hartford was presented with testimony from Bloom and her doctor that she experienced debilitating seizures, but it was also presented with surveillance evidence and medical reports that she experienced no seizures at all, and in either case, was fit to work without restriction. Thus, the Court finds that is was "entirely appropriate" to rely on the reviewing physicians' reports to "rebut the opinion of the treating physician[ ] asserting [Bloom] is disabled," *Hufford v. Harris Corp.,* 322 F.Supp.2d 1345, 1359 (M.D.Fla. 2004), and to determine Bloom was not disabled under the plan.

### ii. Hartford's Decision to Deny Benefits was Not Arbitrary and Capricious

 While *Blankenship* instructs the Court to end its inquiry after determining an administrator's benefits-denial decision was not wrong, the Court simply notes that under the facts of this case and

prevailing case law, Hartford's decision cannot be seen as arbitrary and capricious. This standard requires the Court to determine if there is "a reasonable basis" for the administrator's decision. *Blankenship*, 644 F.3d at 1355. A reasonable determination is not necessarily the "best" determination, or even the result the Court would have reached. *See Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir.2011) ("[r]easonableness does not mean that we would make the same decision"). Rather, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Perry v. United Food & Comm. Workers Dist. Unions*, 64 F.3d 238, 241 (6th Cir.1995). Thus, "even if there is evidence that would support a contrary decision," *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1140 (11th Cir.1989), the Court must accord deference to the administrator's decision if reasonable.

Here, considering the facts as presented above, it is clear that a reasonable basis existed for Hartford's decision to terminate Bloom's benefits. Again, Bloom submitted no concrete, objective evidence in support of her claim that she could not work due to her seizure disorder and related cognitive disability. Dr. Shiftan's medical records were described as "primarily historical" and based on Bloom's "subjective reports" by Hartford's independent physicians. While hospital records demonstrate that Bloom complained of "petit mal seizures" and that "seizure precautions" were taken, there are no reports from any medical professional actually observing a seizure occur. Furthermore, though Bloom's family and friends wrote letters testifying as to her seizures and inhibited cognitive function, a diagnostic examination and file review performed by Hartford's independent doctors found no clini-

cal evidence to support those claims. Even if it was the case that Bloom, or the Court, could offer an equally reasonable interpretation of the evidence to support an award of benefits in this instance, Hartford's denial of benefits cannot be reversed if a reasonable basis exists to support it. *See Rutledge v. Liberty Life Ass. Co.*, 481 F.3d 655, 659 (8th Cir.2007) ("we must affirm if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision") (emphasis in original). In fact, as discussed below, the majority of Bloom's challenges to Hartford's decision are procedural, not substantive in nature, as it is clear that a reasonable basis, even if disputed, exists to support Hartford's benefits-denial. Because the Court does not find the procedural irregularities surrounding Bloom's benefits determination to amount to a deprivation of a full and fair review of her claim, the Court holds that Hartford's decision to terminate Blooms benefits was supported by a reasonable basis and was not arbitrary and capricious.

### iii. Hartford Provided a Full and Fair Review of Bloom's Claim

Bloom claims that Hartford failed to act in accordance with its internal policies, and thus, failed to provide a full and fair review of her claim. Particularly, Bloom claims that Hartford: (1) improperly initiated and used surveillance as a basis to terminate her benefits; (2) failed to acknowledge consideration of Bloom's Social Security Disability ("SSD") award in Bloom's termination letter; and (3) failed to employ a "perfection statement" to notify Bloom of information absent from the administrative record. Based on its procedural noncompliance, Bloom argues that Hartford's decision should be reversed or Bloom's claim should be remanded for a full and fair review. While Hartford

failed, in some respects, to fully comply with its internal claims procedures, the Court finds that any irregularities did not deprive Bloom of a full and fair review of her claim such that Hartford's decision to terminate her benefits was unreasonable.

Pursuant to ERISA § 503, the Full and Fair Review Regulations mandate certain requirements for the claims review process. *See* 29 U.S.C. § 1135; 29 C.F.R. § 2560.503–1. Among these is the obligation that administrators establish and maintain reasonable procedures for evaluating benefit claims. 29 C.F.R. § 2560.503–1(b). In *Glenn*, the Supreme Court rejected the proposition that courts should subject a conflicted administrator, imbued with discretion to approve or deny benefits, to an altered standard of review when reviewing claims of procedural misconduct. *See Glenn*, 554 U.S. at 115, 128 S.Ct. 2343 (observing that trust, law, which informs ERISA jurisprudence, continues to apply a deferential standard of review to a conflicted decisionmaker when determining whether he, substantively or procedurally, abused his discretion). Thus, the Court's inquiry is directed toward whether Hartford's procedural violations substantially impacted Hartford's determination of Bloom's claim such that she did not receive a full and fair review and Hartford abused its discretion in terminating her benefits. *See Miller v. Am. Airlines, Inc.,* 632 F.3d 837, 852–53 (3d Cir.2011)("[administrator's] noncompliance with the statute weighs in favor of finding that [its] decision was arbitrary and capricious"). As discussed below, the Court finds Hartford's procedural violations did not rise to this level.

Bloom criticizes Hartford's decision to employ surveillance, claiming that Hartford prematurely conducted surveillance without a "pre-surveillance investigation." To support her claim, Bloom points to language in Hartford's claims manual which states that surveillance should be conducted "only after conducting an appropriate pre-surveillance investigation." Hartford's representative testified that a pre-surveillance investigation means "don't do surveillance as a first step." Additionally, Bloom points to Hartford's records which indicate that Bloom was "refer[ed] to siu [special investigations unit] to see if they can impact [the] claim," indicating that Hartford arbitrarily took measures to terminate her benefits.

The Court finds that any failure by Hartford to take prior steps to investigating Bloom's claim before employing surveillance did not amount to abuse of discretion. A further reading of the records cited by Bloom indicates that the claim manager also noted that Bloom's "disability appears mainly supported by subjective complaints of seizures." Thus, while it appears Hartford failed to abide by its internal policies by referring Bloom's claim for surveillance prior to some type of pre-surveillance investigation, it ultimately cannot be said that Hartford's noncompliance was arbitrary, or that it impacted Bloom's claim in such a way that she did not receive a fair review of her benefits determination. Hartford may have concluded that because Bloom's claims were entirely subjective, that other typical, pre-investigative procedures were futile. Moreover, it may have concluded that surveillance was the best method to verify her claim and condition. *See Kiloh v. Hartford Life Ins. Co.,* 2005 WL 2105957, \*13 (M.D.Fla. Aug. 31, 2005). (video surveillance has "great utility" for "verifying many components of the subjective self-reporting and the corresponding opinions rendered on such self-reporting"). In the end, the administrative record included Bloom's subsequent explanation of her ability to drive and perform other functional activities recorded in the surveillance

video. Thus, Bloom's main concern—the surveillance video was not a fair depiction of her debilitating condition—was mitigated by the inclusion of her statements in the record, considered by Hartford and the independent physicians. Therefore, the Court does not find that Hartford's use of surveillance prejudiced Bloom's claim or prevented the full development of the administrative record.

■ Bloom's other procedural challenges fall to the same fate. Hartford's failure to specifically acknowledge that Bloom's SSD award was considered in its determination to terminate her benefits "does not make [its] decision wrong or even unreasonable." *Herman v. Metro. Life. Ins. Co.*, 689 F.Supp.2d 1316, 1326 (M.D.Fla.2010). That is because the "legal principles controlling the Social Security analysis are different from those governing the ERISA analysis." *Id.* This is particularly true when Hartford had objective, reliable evidence rebut Bloom's claim of disability, i.e., medical examinations and reports indicating no neurological abnormality or cognitive impairment. *See also Richards*, 356 F.Supp.2d at 1288–89 (recognizing that Social Security Administration decisions are "not persuasive in ERISA benefits cases").

Furthermore, Bloom's reliance on Hartford's failure to issue a "perfection statement" is equally unavailing.[6] In particular, Bloom claims that Hartford failed to notify Bloom of relevant evidence missing from her file, namely, abnormal ambulatory EEG and a neuropsychological exam to support her cognitive deficits. A review of Hartford's claim manual, however, reveals that a perfection statement is only required if Hartford's termination was based on "a failure to submit an element of "proof of loss" that [it] requested, but did not receive ...." Here, Hartford's benefits-denial was not based solely on Bloom's failure to produce objective evidence of her disability; rather, the surveillance video and IME demonstrated objective evidence contradicting Bloom's claim. Moreover, examples provided in Hartford's claims manual of when a perfection statement should be issued indicate that it is more appropriately used when an administrator requests specific, tangible materials pertinent to a claimant's claim. *See* Ex. A to Pl.'s Resp to Def.'s Mot. for Summ. J. [**DE 65**] (a "perfection statement" is required when "a requested APS of Continued Disability" is not provided; an "updated narrative and/or records" is not provided; or "documentation of Current Monthly Earnings" is not provided). To allow Bloom to rely on Hartford's failure to provide a perfection statement as a sword to overturn its decision based, in part, on her categorical failure to produce objective evidence to support her claim, exceeds the purpose and applicability of the perfection statement in the ERISA context. *See Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1465 (9th Cir.1997) (interpreting the Full and Fair Review Regulations, stating: "If the plan is unable to make a rational decision on the basis of the

---

6. Section 2560.503–1(g)(iii) of the Full and Fair Review Regulations also mandates a plan administrator to provide a claimant "a description of any additional material ... necessary for the claimant to perfect the claim and an explanation of why such material ... is necessary ...." 29 C.F.R. § 2560.503–1(g)(iii). Bloom does not rely on this provision to assert Hartford failed to provide a full and fair review. Regardless, as the Court discussed above, Bloom makes no showing that a neuropsychological exam—the evidence Bloom contends that Hartford failed to notify her to obtain—would provide an objective basis to substantiate her seizure disorder or cognitive impairment. In other words, the Court finds that such evidence was not necessary to "perfect" Bloom's claim, as there is no indication it would do so.

materials submitted by the claimant, it must explain what else it needs."). In any condition, Hartford was under no duty to obtain objective evidence on behalf of Bloom to support her claim, especially where there is no indication that an abnormal EEG or neuropsychological exam would provide any definitive support for Bloom's disabling condition. *See Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir.2009) (holding that "remand is unnecessary where it would be futile").

Ultimately, the Court finds that Hartford's procedural violations were *de minimus* in nature and did not impact a full and fair review of Bloom's claims. Bloom did not demonstrate that these procedural violations amounted to a conflict of interest with "sufficient inherent or case-specific importance." *Blankenship*, 644 F.3d at 1357 (internal citation omitted). Thus, the Court cannot conclude that Hartford's decision to terminate Bloom's benefits was wrong or arbitrary and capricious. Therefore, the Court declines Bloom's request for remand based on procedural irregularities and upholds Hartford's decision to terminate her long-term disability benefits in this instance.

## IV. Conclusion

The Court has carefully considered the motions, responses, replies, applicable law, and pertinent portions of the record. For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that:

1) Bloom's motion to supplement the administrative record [**DE 51**] is **DENIED**;

2) Hartford's motions to strike Bloom's exhibits [**DE 54, 69**] is **DENIED**;

3) Hartford's motion for summary judgment [**DE 42**] is **GRANTED**;

4) Bloom's motion for summary judgment [**DE 46**] is **DENIED**.

Final judgment will be issued by separate order.